**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

|  |  |
|---|---|
| ALL EUROPEAN AUTO SUPPLY, INC., individually and on behalf of a class of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>AISIN SEIKI CO. LTD., AISIN AUTOMOTIVE CASTING, LLC, KOREA DELPHI AUTOMOTIVE SYSTEMS CORP., HITACHI, LTD., HITACHI AUTOMOTIVE SYSTEMS, LTD., HITACHI AUTOMOTIVE SYSTEMS AMERICAS, INC., MIKUNI CORPORATION, MIKUNI AMERICAN CORPORATION, MITSUBISHI ELECTRIC CORPORATION, MITSUBISHI ELECTRIC US HOLDINGS, INC., MITSUBISHI ELECTRIC AUTOMOTIVE AMERICA, INC.<br><br>                    Defendants. | Case No. _____ |

## CLASS ACTION COMPLAINT

Plaintiff All European Auto Supply, Inc. ("Plaintiff"), individually and on behalf of the proposed class of direct purchasers of Valve Timing Control Devices (as defined below), brings this action against Defendants Aisin Seiki Co., Ltd., Aisin Automotive Casting, LLC , Korea Delphi Automotive Systems Corp., Hitachi, Ltd., Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., Mikuni Corporation, Mikuni American Corporation, Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. (collectively, "Defendants"), and other named and unnamed co-conspirators, for damages under the antitrust laws of the United States and demands a jury trial,

and, upon personal information as to the facts pertaining to itself and upon information and belief as to all other matters, hereby alleges as follows:

## INTRODUCTION

1.      The United States Department of Justice (the "DOJ"), in conjunction with various domestic and foreign governmental agencies, is currently conducting an investigation into the automotive parts industry that one DOJ official described as "appear[ing] to be the biggest criminal antitrust investigation that we've ever encountered."   The DOJ's investigation encompasses a wide array of automotive parts and has already yielded billions of dollars in criminal fines as well as dozens of prison sentences.

2.      Some of the automotive parts being investigated include "Valve Timing Control Devices." These devices control the timing associated with the opening and closing of the intake valve and exhaustive valve, which depend on driving conditions and contribute to the engine management system of the vehicle. Valve Timing Control Devices includes the variable cam timing ("VCT") actuator, other actuators (including variable timing control actuators), and/or solenoid valve. Some Valve Timing Control Devices may contain an oil flow control valve ("OCV"). Discharged oil from the engine oil pump is distributed by the OCV to two oil chambers of each VCT. The OCV controls the oil amounts of the oil chambers. Valve Timing Control Manufacturers sell VCTs and OCVs together and separately. The VCT controls the opening and closing timing of the valve related to the oil amounts of the oil chambers. Valve Timing Control Devices are sometimes referred to as "variable valve timing" systems.

3.      Defendants are manufacturers of Valve Timing Control Devices sold throughout the United States, or installed in motor vehicles manufactured or sold throughout the United States, that, together with the DENSO Co-Conspirators and other as-yet unknown co-conspirators, entered into an agreement, combination, or conspiracy to fix, raise, maintain, and/or

stabilize prices, rig bids, and allocate the market and customers in the United States for Valve Timing Control Devices. This agreement, combination, or conspiracy constituted an unreasonable restraint of trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

4.     The global market for Valve Timing Control Devices is estimated to reach over $6.4 billion in revenue by 2018.

5.     Defendant Aisin Seiki Co., Ltd. has pled guilty to a one-count Information and agreed to pay $35.8 million in criminal fines for its participation in a conspiracy to rig bids for, and to fix stabilize, and maintain the prices of, Valve Timing Control Devices sold in violation of the Sherman Act.

6.     Defendant Hitachi Automotive Systems, Ltd. pled guilty and paid a $195 million fine for its part in conspiracy to rig bids for, and fix, stabilize, and maintain the prices of certain automotive parts, including Valve Timing Control Devices.

7.     Defendant Mitsubishi Electric Corporation has agreed to plead guilty and to pay criminal fines of $190 million for participating in a conspiracy to rig bids for, and to fix, stabilize, and maintain the price of certain automotive parts, including Valve Timing Control Device components such as VCT's and Variable Valve Timing.

8.     As a direct and foreseeable result of the unlawful and anticompetitive conduct alleged herein, direct purchasers like Plaintiff and others like it paid artificially inflated prices for Valve Timing Control Devices during the period starting at least as early as January 1, 2000 and continuing to the present, or through such time as the anticompetitive effects of Defendants' conduct ceased (the "Class Period").

9.      Plaintiff seeks to represent a class of direct purchasers consisting of all persons and entities who, during the Class Period, purchased Valve Timing Control Devices in the United States from one or more of the Defendants or their subsidiaries or affiliates.

## JURISDICTION AND VENUE

10.      Plaintiff brings this action to obtain injunctive relief and to recover treble damages, costs of suit, and reasonable expenses and attorneys' fees, resulting from Defendants' violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

11.      The Court has subject matter jurisdiction over this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

12.      The Court has personal jurisdiction over each of the Defendants as each, either directly or through the ownership or control of their United States subsidiaries, (a) resides in this District, (b) transacted business throughout the United States, including in this District, (c) sold or marketed substantial quantities of Valve Timing Control Devices throughout the United States, including in this District, (d) committed overt acts in furtherance of the conspiracy alleged herein in the United States, including in this District, (e) engaged in a conspiracy directed at, and had a direct, substantial, and reasonably foreseeable and intended effect of, causing injury to the business or property of persons and entities throughout the United States, including in this District, or (f) had substantial aggregate contacts with the United States as a whole, including in this District.

13.      Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, one or more of the Defendants reside in this District, and a substantial portion of the affected interstate trade and commerce was carried out in this District.

14. Defendants' conspiracy and wrongdoing explained herein adversely affected direct purchasers of Valve Timing Control Devices in the United States and subjected Plaintiff to artificially created higher prices for these automotive parts.

## PARTIES

### Plaintiff

15. All European Auto Supply, Inc. ("AEAS") is a Michigan corporation with its principal place of business in Royal Oak, Michigan. AEAS purchased Valve Timing Control Devices directly from one or more of the Defendants during the Class Period and suffered injury as a result of Defendants' unlawful conduct.

### Defendants

**The Aisin Defendants**

16. Defendant Aisin Seiki Co., Ltd. is a Japanese corporation. Its principal place of business is in Kariya, Japan. Defendant Aisin Seiki Co., Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactures, marketed and/or sold Valve Timing Control Devices purchased throughout the United States, including this District, during the Class Period.

17. Defendant Aisin Automotive Casting, LLC is a limited liability company. Its principal place of business is in London, Kentucky. It is a subsidiary of and wholly owned and/or controlled by its parent, Aisin Seiki Co., Ltd. Aisin Automotive Casting, LLC – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactures, marketed, and/or sold Valve Timing Control Devices purchased throughout the United States, including this District, during the Class Period.

**The Delphi Defendant**

18.     Defendant Korea Delphi Automotive Systems Corp. is a Korean corporation. Its principal place of business is Daegu, South Korea. It is a subsidiary of and wholly owned and/or controlled by its parent, Delphi Automotive LLP. Korea Delphi Automotive Systems Corp – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Systems that were purchased throughout the United States, including this District, during the Class Period.

19.     Korea Delphi Automotive Systems Corp. and Delphi Automotive LLP are collectively referred to herein as "Delphi."

**The Hitachi Defendants**

20.     Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period.

21.     Defendant Hitachi Automotive Systems, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.  Hitachi Automotive Systems, Ltd. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period.

22.     Defendant Hitachi Automotive Systems Americas, Inc. is a Delaware corporation with its principal place of business in Harrodsburg, Kentucky.  Hitachi Automotive Systems Americas, Inc., a wholly owned subsidiary of Defendant Hitachi Automotive Systems, Ltd., manufactured, marketed, and/or sold Valve Timing Control Devices that were purchased

throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company.

23.     Defendants Hitachi, Ltd., Hitachi Automotive Systems, Ltd. and Hitachi Automotive Systems Americas, Inc. are collectively referred to herein as "Hitachi" or the "Hitachi Defendants."

**The Mikuni Defendants**

24.     Defendant Mikuni Corporation is a Japanese corporation. Its principal place of business is in Tokyo, Japan. Mikuni Corporation directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactures, marketed and/or sold Valve Timing Control Devices that were purchased throughout the United States, including this District, during the Class Period.

25.     Defendant Mikuni American Corporation is a California corporation. Its principal place of business is in Northridge, California. It is a subsidiary of and wholly owned and/or controlled by its parent, Mikuni Corp. Mikuni American Corp. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactures, marketed, and/or sold Valve Timing Control Systems that were purchased throughout the United States, including in this District, during the Class Period.

26.     Defendants Mikuni Corporation and Mikuni American Corporation are collectively referred to herein as "Mikuni" or the "Mikuni Defendants."

**The Mitsubishi Defendants**

27.     Defendant Mitsubishi Electric Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.  Mitsubishi Electric Corporation – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed,

and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period.

28.     Defendant Mitsubishi Electric US Holdings, Inc. is a Delaware corporation with its principal place of business in Cypress, California.  Mitsubishi Electric US Holdings, Inc., a wholly owned subsidiary of Defendant Mitsubishi Electric Corporation, is the parent company of Mitsubishi Electric Automotive America, Inc.  Mitsubishi Electric US Holdings, Inc. – directly and/or through its subsidiary, which it wholly owned and/or controlled – manufactured, marketed, and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, the activities of Mitsubishi Electric US Holdings, Inc. and its subsidiary were under the control and direction of Mitsubishi Electric Corporation.

29.     Defendant Mitsubishi Electric Automotive America, Inc. is a Delaware corporation with its principal place of business in Mason, Ohio.  Mitsubishi Electric Automotive America, Inc., a wholly owned subsidiary of Defendant Mitsubishi Electric US Holdings, Inc., manufactured, marketed, and/or sold Valve Timing Control Devices that were purchased throughout the United States, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its parent company, Mitsubishi Electric US Holdings, Inc., and/or the direction of its parent's parent company, Mitsubishi Electric Corporation.

30.     Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. are collectively referred to herein as "Mitsubishi" or the "Mitsubishi Defendants."

**Agents and Co-Conspirators**

31.     Various persons or firms not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.   These co-conspirators include Denso Corporation, Denso International America, Inc., Denso Products and Services Americas, Inc. (f/k/a Denso Sales California, Inc.), and Denso International Korea Corporation (collectively referred to herein as "DENSO" or the "DENSO Co-Conspirators").  The Defendants are jointly and severally liable for the acts of their co-conspirators whether named or not named as Defendants in this Complaint.

32.     The acts alleged herein to have been performed by Defendants and their co-conspirators were authorized, ordered, and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control, or transaction of the Defendants' (or co-conspirators') business affairs.

33.     Each Defendant and co-conspirator acted as the agent, principal, or joint venturer of the other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

34.     The acts alleged herein that have been performed by Aisin Automotive Casting, LLC, Korea Delphi Automotive Systems Corp., Denso International America, Inc., Denso Products and Services Americas, Inc., Denso International Korea Corporation, Hitachi Automotive Systems, Ltd., Hitachi Automotive Systems Americas, Inc., Mikuni American Corporation, Mitsubishi Electric US Holdings, Inc., and Mitsubishi Electric Automotive America, Inc. were authorized, ordered, and condoned by their respective parent companies.

## FACTUAL ALLEGATIONS

### A.  Product Description: Valve Timing Control Devices

35.     "Valve Timing Control Devices" are devices that are part of a vehicle's engine. Valve Timing Control Devices control the opening/closing timing of an intake valve and exhaust valve based on driving conditions. The Valve Timing Control Device is comprised of a VCT, actuator, and/or solenoid valve; some may also have an OCV. The OCV takes discharged oil from the engine oil pump, and distributes the oil to two oil chambers of the VCT. The OCV controls the oil amounts of the oil chambers. The Valve Timing Control Devices are sold together and separately.

36.     Valve Timing Control Devices are installed by automobile original equipment manufacturers ("OEMs") in new cars as part of the automotive manufacturing process.  They also are installed in automobiles to replace failing, defective, or damaged Valve Timing Control Devices.

37.     Defendants and their co-conspirators supplied Valve Timing Control Devices that were: (1) manufactured in the United States and installed in motor vehicles manufactured in the United States or used for replacement parts for motor vehicles in the United States; (2) manufactured abroad, exported to the United States, and installed in motor vehicles manufactured and sold in the United States; and (3) manufactured abroad and exported into the United States for use as replacement parts for motor vehicles in the United States.

### B.  The Valve Timing Control Devices Market

38.     The Valve Timing Control Devices market has certain characteristics that are conducive to a price-fixing conspiracy and that make Defendants' conspiracy more plausible, namely there are high barriers to entry and demand for the product is inelastic.

39.     There are substantial barriers to entry in the Valve Timing Control Devices market as any new entrant would face costly and lengthy start-up costs, including manufacturing plants and equipment, research and development, transportation, distribution infrastructure, the obtaining of skilled labor, and the existence of long-standing relationships between customers and suppliers.  Furthermore, Defendants and their co-conspirators own multiple patents related to the manufacture of Valve Timing Control Devices that further inhibit market entry.

40.     Demand for Valve Timing Control Devices is highly inelastic—*i.e.*, sellers of Valve Timing Control Devices can increase prices with little or no decline in units sold.  This is because there are no viable substitutes for these products (even if prices are kept at a supra-competitive level).

**C.  The Request for Quotation Process**

41.     When purchasing Valve Timing Control Devices, for manufacturing a new motor vehicle, an OEM issues a Request for Quotation ("RFQ").  Automotive parts manufacturers, such as the Defendants, then submit a bid or quotation to the OEM in response to the RFQ.

42.     The RFQ process is designed to obtain competitive, independent bids from multiple suppliers.  To that end, an OEM will issue the RFQ to multiple competing parts suppliers, those suppliers will submit bids, and the OEM will select a winner (usually the lowest bid).  Sometimes, before selecting the winner, an OEM or the suppliers may revise the technical specifications, and revised bids will be submitted.

43.     The parts purchased by the OEM in connection with that RFQ are purchased from the winning parts manufacturer for the lifespan of the motor vehicle model, which on average is between four to six years.  During that time frame, whenever an OEM purchases Valve Timing Control Devices for that motor vehicle model, the OEM purchases the Valve Timing Control

Devices from the parts manufacturer who won the RFQ and was awarded the supply contract, at the price set by that supply contract.

44.     The prices set by the RFQ process are also used when direct purchasers, other than the OEM who issued the RFQ, purchase Valve Timing Control Devices from the Defendants, such as those purchasing Valve Timing Control Devices to replace parts as they become worn or damaged.  Every subsequent purchaser who buys Valve Timing Control Devices from that Defendant pays at least the winning price set by the RFQ or higher.

45.     Thus, the RFQ process described above not only sets the prices for Valve Timing Control Devices incorporated into new motor vehicles manufactured by that particular OEM, it also sets the price floor for all other direct purchasers, including those making purchases for use as replacement and aftermarket parts.

**D.  Defendants' Valve Timing Control Devices Conspiracy**

46.     During the Class Period, Defendants and their co-conspirators engaged in a single conspiracy to raise, fix, maintain, and/or stabilize prices for Valve Timing Control Devices by price-fixing, rigging bids for, and allocating the market and customers of Valve Timing Control Devices sold in or into the United States.

47.     In  furtherance  of  that  conspiracy,  Defendants  and  their  co-conspirators participated in meetings, telephone conversations, emails, and other communications in order to discuss bids and price quotations for Valve Timing Control Devices sold in or into the United States, and agreed to rig bids and allocate the supply of those Valve Timing Control Devices. Defendants and their co-conspirators then submitted as part of the RFQ process bids and price quotations to the OEMs in accordance with those conspiratorial agreements.

48.     Defendants and their co-conspirators knew and intended that their conduct would impact not only Timing Control Devices sold to the OEMs as a result of the rigged bidding processes, but also the Valve Timing Control Devices sold to all direct purchasers throughout the United States.

49.     This was because the conspiracy permitted the Defendants and their co-conspirators to fix, raise, maintain, and/or stabilize the prices paid by OEMs in order to set a floor for the prices paid by all other direct purchasers of Valve Timing Control Devices.

50.     As a result of the conspiracy, OEMs and all or nearly all other direct purchasers of Valve Timing Control Devices paid supra-competitive prices for those products.

**E. Government Investigations and Guilty Pleas**

51.     Government officials in the United States, Europe, Canada, and Japan have been involved in a globally coordinated antitrust investigation for several years involving automotive parts, including Valve Timing Control Devices. The investigation began in Europe after some European OEMs lodged a complaint with the European Commission ("EC").

52.     As a result of this investigation, United States, European, and Japanese authorities executed surprise raids in February 2010 at the offices of several automotive parts manufacturers, including some of the Defendants. To obtain search warrants for the raids conducted in the United States, the government was legally required to demonstrate probable cause that it would obtain evidence of an antitrust violation as result of executing the warrant— *i.e.*, the United States must have presented sufficient evidence to the magistrate to convince him or her that a person of reasonable caution would believe that raiding these offices would uncover additional evidence of antitrust violations.

53.     As of the filing of this Complaint, thirty-five (35) companies and twenty-nine (29) executives have pled guilty or agreed to plead guilty as a result of the DOJ's automotive parts investigation, resulting in more than $2.5 billion in criminal fines and dozens of prison sentences.

54.     According to the FBI's Special Agent in Charge Andrew G. Arena, "This criminal activity has a significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade.  The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold." The DOJ confirmed that these investigations were the largest criminal investigations the Antitrust Division has pursued.

**Aisin, Hitachi, and Mitsubishi Have Pled Guilty to Price-Fixing Valve Timing Control Devices**

55.     Defendants Aisin Seiki Co., Ltd., Hitachi Automotive Systems, Ltd., and Mitsubishi Electric Corporation have pled guilty to participating in a combination or conspiracy to fix, stabilize, and maintain the prices of automotive parts, including Valve Timing Control Devices, in violation of the Sherman Act.

56.     The respective plea agreements also covered these Defendants' "related entities" or "subsidiaries," including Defendants named in this complaint.  For example, the Aisin and Hitachi agreements included a promise by the DOJ not to prosecute "any of its related entities [including Defendant Aisin Automotive Casting, LLC, Hitachi Automotive Systems Americas, Inc. and the former Hitachi Automotive Systems Group of Defendant Hitachi, Ltd. as it existed prior to July 1, 2009] for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of automotive parts[.]"     The Mitsubishi agreement contained a nearly

identical provision, except that "related entities" was replaced by "subsidiaries."  Similarly, the Hitachi and Aisin agreements provided that the "United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of signature of this Plea Agreement;" the Mitsubishi agreement contained the same language but for the substitution of "subsidiaries" for "related entities."  In addition, the plea agreements required cooperation from these related entities or subsidiaries, as the case may be, and their respective officers, directors and employees.

57.     According to separate Informations filed against these Defendants, Aisin Seiki Co., Ltd., Hitachi Automotive Systems, Ltd. and Mitsubishi Electric Corporation, and their co-conspirators carried out their conspiracy by, among other things:

(a)     participating in meetings, conversations, and communications to discuss the bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(b)     agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to automobile manufacturers in the United States and elsewhere;

(c)     agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive parts [including Valve Control Timing Devices] sold to automobile manufacturers in the United States and elsewhere;

(d)     agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by automobile manufacturers in the United States and elsewhere;

(e)     submitting bids, price quotations, and price adjustments to automobile manufacturers in the United States and elsewhere in accordance with the agreements reached;

(f)     selling automotive parts [including Valve Control Timing Devices] to automobile manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

(g)  accepting payment for automotive parts sold to automobile manufacturers in the United State and elsewhere at collusive and noncompetitive prices;

(h)  engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

(i)  employing measures to keep their conduct secret, including, but not limited to, using code names and meeting at remote locations.

58.   The Information filed against these Defendants also provided additional details regarding their participation in the conspiracy.

59.   **Hitachi**:   On September 26, 2013, the DOJ announced that Defendant Hitachi Automotive Systems, Ltd. agreed to plead guilty to participating in a conspiracy regarding certain automotive parts, including Valve Timing Control Devices, from at least as early as January 2000 until at least February 2010.   As part of its guilty plea, Hitachi Automotive Systems, Ltd. agreed to pay a $195 million fine.

60.   Hitachi's employees took steps to obstruct the DOJ's criminal investigation into its collusive conduct.   According to its plea agreement, in February 2010, some of Hitachi's employees became aware of a criminal investigation into the automotive parts industry when one of its competitors was searched by United States law enforcement authorities.   Over several days, Hitachi employees destroyed incriminating evidence.   In July 2011, certain Hitachi employees discovered Hitachi was being raided by antitrust authorities outside of the United States. Immediately after learning of the search, those employees took steps to destroy incriminating evidence.   On both occurrences, the evidence destroyed included electronic files and paper documents.   Some of the employees involved in these efforts were Hitachi's senior managers.

61.     Additionally, on September 18, 2014, the DOJ announced a one-count indictment against four executives at Hitachi Automotive Systems, Ltd.—Takashi Toyokuni, Ken Funasaki, Kazunobu Tsunekawa, and Tomiya Itakura—charging them with conspiring to fix prices of various automotive parts, including Valve Timing Control Devices, between at least January 2000 and February 2010.

62.     On April 23, 2015, one of the four executives, Takashi Toyokuni, a former manager and director at Hitachi Automotive Systems, Ltd., pled guilty to participating in a conspiracy to fix the prices of various automotive parts, including Valve Timing Control Devices.  He was sentenced to 15 months and ordered to pay $20,000.

63.     **Mitsubishi**:   On September 26, 2013, the DOJ announced that Defendant Mitsubishi Electric Corporation agreed to plead guilty to participating in a conspiracy regarding certain automotive parts, including Valve Timing Control Devices, from at least as early as January 2000 until at least February 2010.[1]   As part of its guilty plea, Mitsubishi Electric Corporation agreed to pay a $190 million fine.

64.     Like Hitachi, Mitsubishi took steps to frustrate the DOJ's criminal investigation into its collusive conduct.   According to Mitsubishi's plea agreement, in February 2010,

---

[1]  According to paragraph 13 of Mitsubishi Electric Corporation's Plea Agreement, the term "[a]utomotive parts" was defined as AC generators, air bag sensors, air bags, air flow sensors, alternators, cam and crank sensors, electric power steering motors, electronic control units, exhaust gas recirculation valves, fuel injectors, fuel pumps, high intensity discharge ballasts, ignition coils, integrated units, keyless entry systems, manifold absolute pressure sensors, purge control valves, starter motors, throttle bodies, variable cam timing, and variable valve timing. The Information filed the same day, however, states that Mitsubishi Electric Corporation and its co-conspirators agreed "to rig bids for, and to fix, stabilize, and maintain the prices of, certain automotive parts, including starter motors, alternators, and ignition coils."  It is unclear whether or not this list was meant to be exhaustive or representative (*i.e.*. if the various other parts identified in the Plea Agreement were also subject to the same big ridding, marketing allocation, and price-fixing activities).

Mitsubishi's employees became aware of a criminal investigation into the automotive parts industry when one of its competitors was searched by United States law enforcement authorities. At that point, the employees took steps to destroy incriminating evidence, including electronic files and paper documents located in both the United States and Japan.  These steps were approved by senior managers based in Japan.

65.     On September 18, 2014, the DOJ announced a three-count indictment against three executives at Mitsubishi Electric Corp.—Atsushi Ueda, Minoru Kurisaki, and Hideyuki Saito.  Count one was against all three executives and charged them with conspiring to fix prices of various automotive parts, including Valve Timing Control Devices, between at least January 2000 and February 2010.  Count two charged Kurisaki and Saito with knowingly conspiring to obstruct justice by destroying documents and corruptly persuading, and attempting to persuade others, to destroy documents.   Count three charged Saito with knowingly and corruptly persuading, and attempting to persuade, executives to destroy documents and delete electronic data that may contain evidence of antitrust crimes in the United States and elsewhere.

**Co-Conspirator DENSO Has Pled Guilty to Price-Fixing Other Automotive Parts**

66.     DENSO has pled guilty to participating in combinations or conspiracies to fix, stabilize, and maintain the prices of other automotive parts in violation of the Sherman Act.

67.     According to Deputy Assistant Attorney General Brent Snyder of the Antitrust Division's Criminal Enforcement Program, "The participants in this conspiracy were not located in just one country or region of the world." Snyder further stated, "Collusion related to automotive parts was global in nature and our efforts to hold responsible companies and individuals accountable for the resulting harm to U.S. consumers and businesses."

68.     On January 30, 2012, the DOJ announced that DENSO Corporation had agreed to pay a $78 million fine and plead guilty to a two-count criminal Information charging it with: (1) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, electronic control units ("ECUs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and until at least February 2010 in violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (2) participating in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere from at least as early as January 2000 and continuing until at least February 2010 in violation of the Sherman Act, 15 U.S.C. § 1. DENSO Corporation's guilty plea makes plausible that they are guilty of a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, Valve Timing Control Devices as well.

69.     Further, several of DENSO Corporation's high-ranking executives have pled guilty to criminal price-fixing in the automotive parts industry this includes; Norihiro Imai, an executive of DENSO Corporation, who agreed to roughly one year in a U.S. prison and pay a $20,000 criminal fine; Makoto Hattori, an executive of DENSO Corporation, who agreed to serve fourteen months in a U.S. prison and pay a $20,000 criminal fine; Yuji Suzuki, an executive of DENSO Corporation, who agreed to serve a sixteen month U.S. prison sentence and pay a $20,000 criminal fine; Hiroshi Watanabe an executive of DENSO Corporation, who agreed to serve fifteen months in a U.S. prison and pay a $20,000 criminal fine; as well as former executives of DENSO Corporation Kazuaki Fujitani and Satoru Horisaki who both agreed to

roughly one year U.S. prison terms and a $20,000 criminal fines each. The guilty plea made by executives of DENSO Corporation makes plausible that the executives are guilty of a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, Valve Timing Control Devices as well. The conspiracy engaged in by DENSO Corporation's current and former executives and its co-conspirators was an unreasonable restraint of trade and commerce in violation of the Sherman Act, 15 U.S.C. § 1.

70.     DENSO Corporation's subsidiary, DENSO International Korea Corporation, was a member of the DENSO family that performed manufacturing and/or marketing and sales operations with respect to sales of products to Korean automobile manufacturers.  For DENSO to effectuate the conspiracy to fix prices and rig bids on, among other products, Valve Timing Control Devices, DENSO International Korea Corporation was a designated entity for rigging bids in response to RFQs issued by Korean automobile manufacturers.

## ANTITRUST INJURY

71.     Defendants' conspiracy suppressed price competition among Defendants and their co-conspirators, causing prices for Valve Timing Control Devices to be artificially inflated throughout the Class Period.

72.     As a result, Plaintiff and the members of the Class paid supra-competitive prices for Valve Timing Control Devices and were deprived of the benefits of a competitive market throughout the Class Period.

73.     Therefore, as a direct and foreseeable result of Defendants' conspiracy, Plaintiff and the members of the Class have been injured in their business or property in that they paid more for Valve Timing Control Devices than they would have in the absence of Defendants' unlawful and anticompetitive conduct.

## CLASS ACTION ALLEGATIONS

74.     Plaintiff brings this action both on behalf of themselves and all others similarly situated (the "Class") pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (b)(3). The Class is defined as follows:

> All individuals and entities that purchased Valve Timing Control Devices in the United States directly from one or more Defendant (or their controlled subsidiaries, affiliates, or joint ventures) from January 1, 2000 through the present.

75.     Plaintiff does not know the exact number of Class members, such information being in the exclusive control of Defendants.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the Class is so numerous and geographically dispersed throughout the United States that joinder of all Class members is impracticable.

76.     There are questions of law or fact common to the Class, including, but not limited to, the following:

(a)     Whether Defendants engaged in a contract, combination, or conspiracy to fix, raise, maintain, or stabilize prices of Valve Timing Control Devices sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated Section 1 of the Sherman Act;

(e)     Whether the contract, combination, or conspiracy caused Valve Timing Control Devices prices to be higher than they would have been in the absence of Defendants' conduct;

(f)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the other Class members;

(g)     Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiff and other Class members;

(h)     Whether Plaintiff and other Class members are entitled to injunctive relief and, if so, the nature and extent of such relief; and

(i)     The appropriate class-wide measure of damages.

77.     These and other questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members.

78.     Plaintiff's claims are typical of the claims of the Class because Plaintiff directly purchased Valve Timing Control Devices from a Defendant, all Class members were damaged by the same conspiracy alleged herein, and the relief sought by Plaintiff is common to the Class.

79.     Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is a direct purchaser of Valve Timing Control Devices and has no conflict with any other members of the Class.  Furthermore, Plaintiff has retained competent counsel experienced in antitrust, class action, and other complex litigation.

80.     Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

81.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.  Prosecution of this matter as a class action will eliminate the possibility of repetitive litigation and there are no inherent barriers to managing the case as a class action.

82.     The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying outcomes.

83.     The Class is also readily definable and is one for which records likely exist in the files of Defendants.

### PLAINTIFF'S CLAIMS ARE TIMELY

84.     Plaintiff and the members of the Class had no knowledge of the anticompetitive conduct alleged herein, or of facts sufficient to place them on notice of the claims set forth herein, until, at the earliest, September 26, 2013.  On that date, the DOJ publicly announced the impending guilty plea of Defendant Hitachi Automotive Systems, Ltd.

85.     As a result, Plaintiff and the members of the Class did not discover, nor could they have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein, until September 26, 2013.  Prior to that time, there was insufficient information to suggest any of the Defendants or their co-conspirators were involved in a conspiracy to fix prices, rig bids, or allocate the market for Valve Timing Control Devices.

86.     Moreover, fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiff and the members of the Class until at least September 26, 2013.  Defendants and their co-conspirators affirmatively and wrongfully concealed their anticompetitive conduct since the Class Period began.

87.     Defendants' conspiracy, by its very nature, was inherently self-concealing.  Moreover, because Valve Timing Control Devices are not exempt from antitrust regulation, and because the price for Valve Timing Control Devices was set through an RFQ process that Plaintiff and members of the class had reason to believe was competitive, Plaintiff and the

members of the Class reasonably believed they were making Valve Timing Control Devices purchases in a competitive industry.

88.     In addition, Defendants took affirmative steps to conceal their conspiracy and carry it out in a manner that would preclude detection.  For example, Defendants used code names and met in remote locations in order to keep their anticompetitive conduct secret.

89.     One or more of the Defendants have already pled guilty to purposefully destroying evidence to avoid detection.  For example, the Plea Agreement for Defendant Hitachi Automotive Systems, Ltd. states:

> In February 2010, certain employees of the defendant became aware of a criminal antitrust investigation when one of their co-conspirators in the criminal activity described in paragraphs 4(a) – (d) of this Plea Agreement was searched by Federal law enforcement authorities in the United States. Over the next several days, certain employees of the defendant took steps to destroy evidence of the defendant's criminal activity described in paragraphs 4(a) – (d).  In July 2011, certain employees of the defendant learned that the defendant was being raided by law enforcement authorities outside the United States in connection with an investigation into violations of competition laws.  Immediately after learning of the search, certain employees of the defendant took steps to destroy evidence of the criminal activity described in paragraphs 4(a) – (d) to prevent its discovery by law enforcement authorities.  On both occasions, the evidence that was destroyed included electronic files and paper documents.  Certain employees involved in the efforts to destroy evidence were senior managers of the defendant.

Similar admissions were made in the Plea Agreement for Defendant Mitsubishi Electric Corporation.

90.     As described above, several employees of the Defendants have pled guilty to charges of obstruction of justice in which they admitted to deleting, destroying, altering, falsifying and/or concealing records and documents, including emails and electronic files.

91.     Because Defendants' anticompetitive conduct was both self-concealing and affirmatively concealed, Plaintiff and the members of the Class did not learn or discover the

24

operative facts giving rise to this Complaint during the Class Period.  No information, actual or constructive, was ever made available to Plaintiff and the members of the Class that would have led a reasonably diligent person to investigate whether a conspiracy existed prior to September 26, 2013.

92.     For these reasons, the statute of limitations applicable to Plaintiff and the Class's claims did not begin to run or were otherwise tolled until September 26, 2013.

## CLAIM FOR RELIEF
### Violation of Section 1 of the Sherman Act
### (Against All Defendants)

93.     Plaintiff incorporates by reference all of the above allegations as if fully set forth herein.

94.     During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, combination, or conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Valve Timing Control Devices sold in or into the United States.

95.     As horizontal competitors, Defendants' agreement, combination, or conspiracy thus constitutes a *per se* violation of the federal antitrust laws.

96.     In accordance with this agreement, combination, or conspiracy, Defendants and their co-conspirators endeavored to and succeeded in rigging bids, allocating the market, and fixing prices for Valve Timing Control Devices sold in or into the United States during the Class Period.

97.     In furtherance of their conspiracy, Defendants and their co-conspirators took at least the following affirmative actions:

(a) Participated in meetings, conversations, and communications to discuss the bids and price quotations for Valve Timing Control Devices to be submitted to direct purchasers in the United States;

(b) Agreed on bids and price quotations to be submitted to direct purchasers in the United States;

(c) Submitted bids and price quotations to direct purchasers of Valve Timing Control Devices in accordance with the agreements reached;

(d) Manipulated prices and allocated supply of Valve Timing Control Devices sold in or into the United States;

(e) Coordinated price adjustments for Valve Timing Control Devices sold in or into the United States;

(f) Sold Valve Timing Control Devices in or into the United States at supra-competitive prices; and

(g) Actively concealed the true nature of their unlawful conduct from Plaintiff and the members of the Class in furtherance of the conspiracy.

98.     As a direct and proximate result of the conduct described above, Plaintiff and the members of the Class have been injured in their business and property in that they paid more for Valve Timing Control Devices during the Class Period than they would have absent the anticompetitive conduct of Defendants and their co-conspirators.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment on their behalf and on behalf of the Class proposed herein, and respectfully requests the following relief:

A.   That the Court determine that this action may proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, with Plaintiff as the designated Class representatives and their counsel as Class Counsel;

B.   That the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators as alleged in this complaint, be adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.   That Plaintiff and members of the Class recover damages sustained by them, as provided by the federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

D.   That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained from continuing and maintaining the combination, conspiracy or agreement alleged herein;

E.   That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law;

F.   That Plaintiff and members of the Class be awarded pre-judgment and post-judgment interest in accordance with law; and

G.   That Plaintiff and members of the Class receive such other or further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated:  September 26, 2017                    Respectfully submitted,


                                             */s/ M. John Dominguez*           
                                             M. John Dominguez
                                             COHEN MILSTEIN SELLERS
                                             & TOLL PLLC
                                             2925 PGA Boulevard, Suite 200
                                             Palm Beach Gardens, FL 33410
                                             (561) 515-2604
                                             jdominguez@cohenmilstein.com

                                             David A. Young
                                             COHEN MILSTEIN SELLERS
                                             & TOLL PLLC
                                             1100 New York Ave. NW, Suite 500
                                             Washington, D.C. 20005
                                             (202) 408-4600
                                             dyoung@cohenmilstein.com

                                             Matthew W. Ruan
                                             COHEN MILSTEIN SELLERS
                                             & TOLL PLLC
                                             88 Pine Street, 14th Floor
                                             New York, NY 10005
                                             (212) 838-7797
                                             mruan@cohenmilstein.com

                                             Solomon B. Cera
                                             Thomas C. Bright
                                             Pamela A. Markert
                                             CERA LLP
                                             595 Market Street, Suite 2300
                                             San Francisco, CA 94105-2835
                                             (415) 777-2230
                                             scera@cerallp.com
                                             tbright@cerallp.com
                                             pmarkert@cerallp.com

                                             David H. Fink (P28235)
                                             Darryl Bressack (P67820)
                                             FINK + ASSOCIATES LAW
                                             38500 Woodward Ave; Suite 350
                                             Bloomfield Hills, MI 48304
                                             Telephone: (248) 971-2500
                                             dfink@finkandassociateslaw.com
                                             dbressack@finkandassociateslaw.com

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
wlondon@fklmlaw.com
mmoskovitz@fklmlaw.com

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkattorneys.com
bcaldes@ srkattorneys.com
jjagher@ srkattorneys.com
jspector@ srkattorneys.com

*Counsel for Plaintiff All European Auto
Supply, Inc. and the Proposed Class*