## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311 Honorable Marianne O. Battani |
| In Re: Valve Timing Control Devices | |
| ALL EUROPEAN AUTO SUPPLY, INC., individually and on behalf of a class of all others similarly situated, | Civil No. 2:17-cv-13158 **ORAL ARGUMENT REQUESTED** |
| Plaintiff | |
| v. | |
| AISIN SEIKI CO., LTD., AISIN AUTOMOTIVE CASTING, LLC, KOREA DELPHI AUTOMOTIVE SYSTEMS CORP., HITACHI, LTD., HITACHI AUTOMOTIVE SYSTEMS, LTD., HITACHI AUTOMOTIVE SYSTEMS AMERICAS, INC., MIKUNI CORPORATION, MIKUNI AMERICAN CORPORATION, MITSUBISHI ELECTRIC CORPORATION, MITSUBISHI ELECTRIC US HOLDINGS, INC., MITSUBISHI ELECTRIC AUTOMOTIVE AMERICA, INC. | |
| Defendants | |

**AISIN SEIKI CO., LTD.'S MOTION TO DISMISS ALL EUROPEAN AUTO SUPPLY,
INC.'S CLASS ACTION COMPLAINT**

PLEASE TAKE NOTICE that, by its counsel listed below, Defendant Aisin Seiki Co.,

Ltd. ("Aisin Seiki"), hereby moves this Court for an Order, pursuant to Federal Rule of Civil

Procedure 12(b)(1) and (6) and under the doctrine of *forum non conveniens*, dismissing all

claims by All European Auto Supply, Inc. ("AEAS") in the *Valve Timing Control Device* action,

No. 2:17-cv-13158-JCO-APP, ECF No. 1 (Sept. 26, 2017).  This motion is based on the attached

brief in support and the exhibits attached thereto, and other further matters as this Court may consider.

In compliance with Local Rule 7.1(a), on May 24, 2018, counsel for Aisin Seiki sought concurrence from counsel for AEAS. Counsel for Aisin Seiki explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

WHEREFORE, Aisin Seiki respectfully requests that this Court issue an Order (i) dismissing all claims for failure to state a claim and/or lack of constitutional and antitrust standing under Rule 12(b)(1) and/or (6); or, in the alternative, (ii) dismissing all claims based on direct purchases from Aisin Seiki entities on the grounds of *forum non conveniens* under Rule 12(b)(6) and staying all remaining claims pending the outcome of any state court proceedings.

Dated: May 24, 2018                          Respectfully submitted,

**CLEARY GOTTLIEB STEEN &**                   **DYKEMA GOSSETT PLLC**
**HAMILTON LLP**

By: */s/ Jeremy J. Calsyn*                    By: */s/ Howard B. Iwrey* (w/consent)
Jeremy J. Calsyn (Bar No. 467737)            Howard B. Iwrey (P39635)
jcalsyn@cgsh.com                             hiwrey@dykema.com
2000 Pennsylvania Ave. NW                    39577 Woodward Ave., Suite 300
Washington, DC 20006                         Bloomfield Hills, MI 48304
Telephone: (202) 974-1500                    Telephone: (248) 203-0526
Fax: (202) 974-1999                          Fax: (248) 203-0763

*Attorneys for Aisin Seiki Co., Ltd.*

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 2:12-md-02311<br>Honorable Marianne O. Battani |
| In Re: Valve Timing Control Devices | |
| ALL EUROPEAN AUTO SUPPLY, INC., individually and on behalf of a class of all others similarly situated,<br><br>                              Plaintiff<br><br>v.<br><br>AISIN SEIKI CO., LTD., AISIN AUTOMOTIVE CASTING, LLC, KOREA DELPHI AUTOMOTIVE SYSTEMS CORP., HITACHI, LTD., HITACHI AUTOMOTIVE SYSTEMS, LTD., HITACHI AUTOMOTIVE SYSTEMS AMERICAS, INC., MIKUNI CORPORATION, MIKUNI AMERICAN CORPORATION, MITSUBISHI ELECTRIC CORPORATION, MITSUBISHI ELECTRIC US HOLDINGS, INC., MITSUBISHI ELECTRIC AUTOMOTIVE AMERICA, INC.<br><br>                              Defendants | Civil No. 2:17-cv-13158<br><br>**ORAL ARGUMENT REQUESTED** |

**BRIEF IN SUPPORT OF AISIN SEIKI CO., LTD.'S MOTION TO DISMISS ALL EUROPEAN AUTO SUPPLY, INC.'S CLASS ACTION COMPLAINT**

## STATEMENT OF ISSUES PRESENTED

1.      Should the Court dismiss the claims based on Aisin Seiki's alleged liability for direct sales of Valve Timing Control Device ("VTCD") to AEAS by any Aisin Seiki entity to enforce the forum-selection agreement that governed all such sales?

       Answer: Yes.

2.      Should the Court dismiss the Complaint because it fails to plausibly allege that Aisin Seiki participated in a conspiracy to fix prices of VTCD sold as aftermarket replacement parts to non-OEM purchasers?

       Answer: Yes.

3.      Should the Court dismiss AEAS' claims for lack of constitutional standing?

       Answer: Yes.

4.      Should the Court dismiss AEAS' claims for lack of antitrust standing?

       Answer: Yes.

5.      Should the Court dismiss AEAS' request for injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, because the Complaint fails to plead any facts that plausibly suggest a continuing conspiracy or ongoing harm to AEAS?

       Answer: Yes.

## <u>STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1.  *General Electric Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095 (6th Cir. 1994)

2.  *In re Titanium Dioxide Antitrust Litigation*, 962 F. Supp. 2d 840 (D. Md. 2013)

3.  *In re Automotive Parts Antitrust Litigation*, No. 12-md-2311, 2017 WL 3579753 (E.D. Mich. Apr. 18, 2017).

4.  *In re Packaged Seafood Products Antitrust Litigation*, No. 15-MD-2670 JLS (MDD), 2017 WL 35571 (S.D. Cal. Jan. 3, 2017)

5.  *In re Nifedipine Antitrust Litigation*, 335 F. Supp. 2d 6 (D.D.C. 2004)

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUES PRESENTED.........................................................................i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ..................ii

TABLE OF AUTHORITIES ........................................................................................iv

INTRODUCTION ......................................................................................................1

STATEMENT OF FACTS ..........................................................................................1

ARGUMENT ............................................................................................................6

    I.    ALL CLAIMS BASED ON DIRECT SALES BY AWA ARE SUBJECT TO A FORUM SELECTION CLAUSE AND SHOULD BE DISMISSED ........................6

        A.    The AWA Forum-Selection Clause is Mandatory and Applicable to AEAS' Claims ........................................................................................6

        B.    Aisin Seiki Can Enforce the AWA Forum-Selection Clause ...........................8

        C.    To Enforce the AWA Forum-Selection Clause, the Court Should Dismiss the Claims Under the Doctrine of *Forum Non Conveniens*...................................9

    II.    THE COMPLAINT'S ALLEGATIONS ARE INSUFFICIENT UNDER *TWOMBLY* ......................................................................................11

    III.    THE COURT SHOULD DISMISS AEAS' CLAIMS FOR LACK OF STANDING.........................................................................................14

    IV.    AEAS IS NOT ENTITLED TO SEEK INJUNCTIVE RELIEF .............................16

CONCLUSION.....................................................................................................18

**TABLE OF AUTHORITIES**

Cases                                                                                                   PAGE(S)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................13

*Associated General Contractors of California, Inc. v. California State Council of
    Carpenters*,
    459 U.S. 519 (1983)..............................................................................................14, 16

*Atlantic Marine Construction Co. v. United States District Court for the Western
    District of Texas*,
    571 U.S. 49 (2013)................................................................................................9, 10

*Automotive Parts Antitrust Litigation, In re*,
    Master File No. 12-md-02311, 2014 WL 2993753 (E.D. Mich. July 3, 2014) .....................13

*Automotive Parts Antitrust Litigation, In re*,
    50 F. Supp. 3d 836 (E.D. Mich. 2014)..................................................................13

*Automotive Parts Antitrust Litigation, In re*,
    Master File No. 12-md-02311, 2017 WL 3579753 (E.D. Mich. Apr. 18, 2017)............7, 8, 10

*Automotive Parts Antitrust Litigation, In re*,
    Nos. 2:16-cv-03802-MOB-MKM & 2:16-cv-03803-MOB-MKM, 2017 WL
    7689654 (E.D. Mich. May 5, 2017)..................................................................3

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................1, 14

*Brush Controls, Inc. v. Executive Automation Systems, Inc.*,
    No. 15-11909, 2015 WL 13413349 (E.D. Mich. Oct. 19, 2015)..............................................6

*Cipro Cases I and II, In re*,
    Nos. 4154 & 4220, 2003 WL 23005275 (Cal. Super. Ct. Nov. 25, 2003) ..........................9-10

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..................................................................................................16

*Commercial Money Center, Inc. v. Illinois Union Insurance Co.*,
    508 F.3d 327 (6th Cir. 2007) ..................................................................................3

*County of Tuolumne v. Sonora Community Hospital*,
    236 F.3d 1148 (9th Cir. 2001) ..................................................................................9

*General Electric Co. v. G. Siempelkamp GmbH & Co.*,
    29 F.3d 1095 (6th Cir. 1994) ..................................................................................6-7

*Iowa Ready–Mix Concrete Antitrust Litigation, In re*,
    768 F. Supp. 2d 961 (N.D. Iowa 2011)...................................................................12

*Kodiak Northwest Inc. v. Wayne County Airport Authority*,
    No. 08-CV-10480-DT, 2008 WL 11355298 (E.D. Mich. May 13, 2018)................................3

*Lu v. Dryclean–U.S.A of California*,
    11 Cal. App. 4th 1490 (1992) ........................................................................8, 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................14, 17

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) ...........................................................................8

*NicSand, Inc. v. 3M Co.*,
    507 F.3d 442 (6th Cir. 2007) ......................................................................14-15

*Nifedipine Antitrust Litigation, In re*,
    335 F. Supp. 2d 6 (D.D.C. 2004) .......................................................................17

*Packaged Seafood Products Antitrust Litigation, In re*,
    No. 15-MD-2670 JLS (MDD), 2017 WL 35571 (S.D. Cal. Jan. 3, 2017) .......................12, 15

*Sierra Club v. Morton*,
    405 U.S. 727 (1972).................................................................................15

*Static Control Components, Inc. v. Lexmark International, Inc.*,
    697 F.3d 387 (2012)..................................................................................16

*TFT–LCD (Flat Panel) Antitrust Litigation, In re*,
    Nos. M 07–1827 SI & C 09–5609 SI, 2010 WL 2629728 (N.D. Cal. June 29,
    2010) ................................................................................................12

*Titanium Dioxide Antitrust Litigation, In re*,
    962 F. Supp. 2d 840 (D. Md. 2013) ...............................................................7, 8-9

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) .........................................................................11

*Travel Agent Commission Antitrust Litigation, In re*,
    583 F.3d 896 (6th Cir. 2009) .........................................................................11

*Valspar Corp. v. E.I. DuPont de Nemours & Co.*,
    Civ. No. 13–3214 (RHK/LIB), 2014 WL 1607584 (D. Minn. Apr. 21, 2014).........................7

*Vernon v. Stabach*,
    No. 13–62378–CIV, 2014 WL 1806861 (S.D. Fla. May 7, 2014))...................................10

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    395 U.S. 100 (1969)..................................................................................................16

**RULES**

Fed. R. Evid. 201 ......................................................................................................3

**OTHER AUTHORITIES**

Cal. Bus. & Prof. Code § 16702 ...............................................................................9

Cal. Bus. & Prof. Code § 16750(a)..........................................................................10

Cal. Code Civ. Proc. § 382 ......................................................................................10

All European Auto Supply Inc., https://www.alleuro (last visited May 22, 2018).........................2

## INTRODUCTION

All European Auto Supply Inc.'s ("AEAS") Complaint attempts to allege a broad price-fixing conspiracy to fix the prices of valve timing control devices ("VTCD") sold to all direct purchasers ("DPP") in the United States – automobile manufacturers and aftermarket replacement part purchasers alike – that purportedly stretched for over seventeen years and involved over a dozen named defendants and co-conspirators.  *See* Class Action Compl., dated Sept. 26, 2017, ECF No. 1, ¶¶ 31, 93-98 ("Compl.").  But the Complaint fails to allege any facts that could plausibly support an inference that such a far-ranging conspiracy existed, much less that Aisin Seiki participated in it, or that AEAS suffered any harm as a result of it.  As such, it fails to pass muster under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), establish AEAS' standing to sue, or show entitlement to injunctive relief and should be dismissed in its entirety.

Even if the Complaint were well-pled, all claims related to AEAS' purchases from an Aisin Seiki entity are subject to a valid, mandatory, and enforceable forum-selection clause. These claims therefore should be dismissed pursuant to the doctrine of *forum non conveniens*, and any remaining claims should be stayed to avoid duplicative proceedings and preserve this Court's judicial resources.

## STATEMENT OF FACTS

On September 26, 2017, AEAS filed this putative class action complaint against Aisin Seiki and its subsidiary Aisin Automotive Casting ("AAS") and Hitachi, Ltd. ("Hitachi"), Mikuni Corporation, Mitsubishi Electric Corporation ("Mitsubishi") and their respective related entities.  The Complaint is styled as an antitrust action under Section 1 of the Sherman Act that

1

arises out of an alleged conspiracy to fix prices for VTCD sold to direct purchasers.  Compl. ¶¶ 31, 93-98.

Aisin Seiki is a Japanese corporation that primarily develops and produces certain components for the automotive industry.  Among its many subsidiaries, two are relevant to this case.  Co-defendant Aisin Automotive Casting manufactures engine-related functional and die cast automotive parts, including a product that falls within the Complaint's definition of VTCD, and supplies those parts to other companies within the Aisin Seiki group.  It does not sell its products to entities outside the Aisin Seiki group.  Those sales are instead made by Aisin World Corp. of America ("AWA"), which sells VTCD and other automotive parts and accessories to purchasers in the United States.  *See* Decl. of Koichi Yamada in Supp. of Aisin Seiki Co., Ltd. and Aisin Automotive Casting, LLC's Mots. to Dismiss All European Auto Supply, Inc.'s Class Action Compl., dated May 23, 2018, ¶¶ 4-7 [attached hereto as Ex. D] ("Yamada Decl."); Decl. of Norikuni Fujishiro in Supp. of Aisin Seiki Co., Ltd. and Aisin Automotive Casting, LLC's Mots. to Dismiss All European Auto Supply, Inc.'s Class Action Compl., dated May 22, 2018, ¶¶ 2, 5-10 [attached hereto as Ex. E] ("Fujishiro Decl.").

VTCD, which control the timing associated with the opening and closing of the intake valve and exhaustive valve, are sold at two levels of the market: (1) to OEMs for use in newly manufactured vehicles; and (2) to a multitude of distributors and other non-OEMs as aftermarket replacement parts.  AEAS falls into the latter category.  It is not an OEM that builds new vehicles, but rather is a wholesale distributor of aftermarket replacement parts.  Compl. ¶ 15; All European Auto Supply Inc., https://www.alleuro.com (last visited May 23, 2018).  Thus, its claims must be based on an anti-competitive conspiracy that affected prices for VTCD in the aftermarket.

To support its assertion that a conspiracy to fix VTCD prices for both OEM and aftermarket purchasers existed in which Aisin Seiki participated, AEAS relies almost exclusively on facts admitted in guilty pleas entered in 2013 and 2014 by Aisin Seiki and co-defendants Hitachi and Mitsubishi following a government investigation of anticompetitive activity involving certain automotive parts that began in February 2010 with "surprise raids" at some of the Defendants' offices.  Compl. ¶¶ 51-73.  Aisin Automotive Casting is not alleged to have ever been charged with or pled guilty to any crimes in connection with this investigation.  None of the guilty pleas by Aisin Seiki, any of its co-defendants, or purported co-conspirator Denso Corporation, however, involved a conspiracy to fix prices of VTCD sold to any direct purchasers other than certain OEMs.  *See* Plea Agreement, *United States v. Aisin Seiki Co., Ltd.*, No. 1:14-cr-00229, filed Dec. 1, 2014, ECF No. 15, ¶¶ 2, 4 [attached hereto as Ex. A] ("Aisin Plea"); *see also* Plea Agreement, *United States v. Hitachi Automotive Systems, Ltd.*, No. 2:13-cr-20707, filed Nov. 6, 2013, ECF No. 8, ¶¶ 2, 4 [attached hereto as Ex. B] ("Hitachi Plea"); Plea Agreement, *United States v. Mitsubishi Electric Corp.*, No. 2:13-cr-20710, filed Nov. 6, 2013, ECF No. 9, ¶ 4 [attached hereto as Ex. C] ("Mitsubishi Plea").  There was no admission by Aisin Seiki (or any other Defendant or co-conspirator), or any charge by the government, that the conspiracy fixed prices for sales to VTCD aftermarket purchasers, such as AEAS.[1]  *See* Information, *United States v. Aisin Seiki Co., Ltd.*, No. 1:14-cr-00229, filed Nov. 13, 2014, ECF No. 1 [attached

---

[1] The Court may consider the exhibits attached to this motion under Rule 12(b)(6) because they are referenced in the Complaint, central to AEAS' allegations, or matters of public record, or under Rule 12(b)(1) as extrinsic evidence relevant to the issue of standing.  *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007); *In re Auto. Parts Antitrust Litig.*, Nos. 2:16-cv-03802-MOB-MKM & 2:16-cv-03803-MOB-MKM, 2017 WL 7689654, at *1 (E.D. Mich. May 5, 2017); *Kodiak Nw. Inc. v. Wayne Cty. Airport Auth.*, No. 08-CV-10480-DT, 2008 WL 11355298, at *2 (E.D. Mich. May 13, 2008); *see also* Fed. R. Evid. 201 (judicial notice).

hereto as Ex. F] ("Aisin Information"); *see also* Information, *United States v. Hitachi Automotive Systems, Ltd.*, No. 2:13-cr-20707, filed Sept. 26, 2013, ECF No. 8) [attached hereto as Ex. G] ("Hitachi Information"); Information, *United States v. Mitsubishi Electric Corp.*, No. 2:13-cr-20710, filed Sept. 26, 2013, ECF No. 9 [attached hereto as Ex. H] ("Mitsubishi Information").

There are no other factual allegations in the Complaint that could establish that Aisin Seiki joined any conspiracy related to the VTCD aftermarket.  The Complaint does not even describe any sales by an Aisin Seiki entity to AEAS or any other aftermarket purchaser during a time when a conspiracy could plausibly be alleged to have been occurring. Nor could it.  Neither Aisin Seiki nor any of its related entities even sold VTCD in the U.S. to aftermarket purchasers like AEAS until September 2015, over a year after it was charged with and pled guilty to the OEM conspiracy.  *See* Ex. D, Yamada Decl. ¶¶ 5-7; Ex. E, Fujishiro Decl. ¶¶ 5-10.  Thus, the Complaint, on its face, does not plausibly allege that Aisin Seiki participated in an alleged conspiracy involving price fixing for VTCD sold to aftermarket purchasers.

Nor does the Complaint allege any facts plausibly supporting the proposition that the prices charged to the OEMs as a result of the conspiracy to which the Defendants pled influenced prices charged to aftermarket purchasers.  The sale of VTCD to OEMs is characterized by a competitive bidding process following an OEM's issuance of a "request for quotation" ("RFQ").  Compl. ¶¶ 41-43.  Thus, each OEM negotiates a particular price with a particular VTCD supplier.  *Id.* ¶ 42.  The Complaint speculates that prices set through an RFQ process by an OEM are also used in aftermarket sales, *id.* ¶¶ 44-45, but contains no facts that would support its conclusion.  For example, it does not explain how prices for aftermarket purchases are negotiated or which OEM's or supplier's price "sets the price floor," *id.* ¶ 45, in the aftermarket.  Thus,

there is no factual basis to support an inference that AEAS or any other non-OEM direct purchaser paid an inflated price for VTCD bought from any of the Defendants.

Although AEAS failed to plead any specific facts about its own purchases of VTCD or the damage suffered as a result of those purchases, its claims for damages against Aisin Seiki appear to be based on purported overcharges on Aisin Seiki's own sales and joint and several liability for overcharges on VTCD sales from other Defendants, Denso, and unnamed co-conspirators. *See* Compl. ¶¶ 3, 31-34, 78; *id.*, Prayer for Relief ¶ C. The Complaint vaguely alleges only that Aisin Seiki or a subsidiary sold VTCD in the U.S. aftermarket at some point during the alleged seventeen year conspiracy. Compl. ¶ 16. In reality, the only Aisin Seiki entity that sold VTCD in the U.S. was AWA, but AWA did not begin selling VTCD to aftermarket purchasers until September 2015. *See* Ex. E, Fujishiro Decl. ¶¶ 5-10. AEAS did not purchase any VTCD from AWA until November 2015, when it participated in a buying group called Automotive Parts Associates, Inc. *Id.* ¶ 9.

When AWA sold VTCD products to AEAS or any other purchaser, it issued an invoice as a contract for the sale that identified the product and the pricing. Each sales invoice also contained a list of "Terms and Conditions" to which the purchaser must agree in order to consummate the sale. *See* Ex. E, Fujishiro Decl., Ex. 1 at 1 ("Seller's [AWA's] acceptance of this contract is expressly conditioned on Buyer's assent to all of the following standard conditions of sale"). Among the Terms and Conditions to which AEAS agreed is a provision describing the pricing mechanism for the order:

> Unless otherwise agreed to in writing, this order will be invoiced at the price prevailing at the time of shipment. Terms of sale of the order shall be governed by the terms and conditions of this invoice and applicable price lists or quotation.

The Terms and Conditions also contained a forum-selection clause:

This Agreement shall be construed in accordance with and governed by the laws of the State of California.  Both parties agree to personal and subject matter jurisdiction exclusively in the State of California.  Any lawsuit or legal action arising out of this Agreement or any breach thereof, shall be brought and maintained only before the Superior Court for the State of California located in Los Angeles County.

Ex. E, Fujishiro Decl., Ex. 1 at 1.

## ARGUMENT

## I.   ALL CLAIMS BASED ON DIRECT SALES BY AWA ARE SUBJECT TO A FORUM SELECTION CLAUSE AND SHOULD BE DISMISSED.

When AEAS purchased VTCD from AWA – which is the only Aisin Seiki entity that sold VTCD in the United States – it agreed to adjudicate all claims related to those purchases in California state court.  This Court should hold AEAS to its bargain and dismiss its claims against Aisin Seiki based on direct purchases from AWA pursuant to the doctrine of *forum non conveniens*.  *See Brush Controls, Inc. v. Exec. Automation Sys., Inc.*, No. 15-11909, 2015 WL 13413349, at *1 (E.D. Mich. Oct. 19, 2015) (dismissing claims for *forum non conveniens* under Rule 12(b)(6)).

### A.   The AWA Forum-Selection Clause is Mandatory and Applicable to AEAS' Claims.

The forum-selection clause that governed AEAS' purchases of VTCD broadly covers "[a]ny lawsuit or legal action arising out of this Agreement or any breach thereof," and requires that it "*shall be* brought and maintained *only before* the Superior Court for the State of California located in Los Angeles County." Ex. E, Fujishiro Decl., Ex. 1 at 1 (emphases added).  By using "shall" and permitting suit "only before" the state court, this forum-selection clause clearly mandates that any legal action arising from AEAS' purchase of VTCD from AWA be brought exclusively in the specified California state court.  *See, e.g.*, *Gen. Elec. Co. v. G. Siempelkamp*

*GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) (a forum selection clause is mandatory and exclusive if it specifies that all disputes shall be or must be brought in a particular jurisdiction).

The claims asserted here fall squarely within the scope of AWA's forum-selection clause. The primary object of the conspiracy alleged in the Complaint purportedly was to fix the prices paid by AEAS and other direct purchasers for VTCD.  Since the purchases from AWA form the basis of AEAS' claims against Aisin Seiki, any claims based on the conspiracy thus "aris[e] out of" the invoices for those purchases.  *See, e.g.*, *Valspar Corp. v. E.I. DuPont De Nemours & Co.*, 15 F. Supp. 3d 928, 933-34 (D. Minn. 2014) (federal antitrust claims alleging a price-fixing conspiracy fell within the scope of a forum-selection clause that governed "transactions contemplated" by a sales agreement); *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 857-58 (D. Md. 2013) ("*Titanium Dioxide*") (price-fixing conspiracy claims fell within forum-selection clause governing a supply agreement).

Indeed, the forum-selection clause in AWA's sales invoices is analogous to the arbitration clauses in Bosch's sales invoices and Denso's distribution agreement that formed the basis for this Court's dismissals of the direct purchaser complaints in the spark plugs and oxygen sensors component litigation.  *See In re Auto. Parts Antitrust Litig.*, Master File No. 12-md-2311, 2017 WL 3579753, at *1, *10  (E.D. Mich. Apr. 18, 2017) ("*Spark Plugs and Oxygen Sensors*"). Just as in that case, the Complaint here alleges that "the prices reflected in [the] sales invoices, which incorporate by reference a [forum-selection] clause, are the product of the Defendants' price-fixing conspiracy."  *Id.* at *7.  Likewise, the clause here matches the breadth of the arbitration clauses at issue in that case, which covered "all disputes between the parties arising out of or related to" Bosch's sales invoices and "any . . . claim arising out of or relating to" Denso's distribution agreement.  *Id.* at *1.  For the same reason that the Court previously held

that Bosch and Denso's arbitration clauses governed the price-fixing allegations in the spark plugs and oxygen sensors litigation, the Court should hold that AWA's forum-selection clause governs AEAS's price-fixing allegations in this case and dismiss this matter accordingly.

### B.   Aisin Seiki Can Enforce the AWA Forum-Selection Clause.

It is of no moment that the forum-selection clause was entered into between AWA and AEAS, and not Aisin Seiki.  Aisin Seiki can enforce the AWA forum-selection clause even though it was not a contracting party, just as NGK could enforce the arbitration clause in Denso's distribution agreement.  *See Spark Plugs and Oxygen Sensors*, 2017 WL 3579753, at *10.

Where, as here, the alleged conspiracy is "so closely related to the contractual relationship," courts apply the forum-selection clause to all defendants.  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 511, 514 n.5 (9th Cir. 1988) (a defendant parent company and its related entities may enforce a forum-selection clause in a dealership agreement signed by a subsidiary); *Lu v. Dryclean–U.S.A. of Cal., Inc.*, 11 Cal. App. 4th 1490, 1494 (1992) (allowing nonsignatory defendants to enforce forum-selection clause because they were "closely related" to the contractual relationship).  AEAS' claims purport to involve concerted anti-competitive conduct by Aisin Seiki involving VTCD sales made "directly and/or through its subsidiaries" like AWA, Compl. ¶ 16, and the alleged misconduct is entwined with and evidenced by the invoices for those purportedly inflated sales.  *See Spark Plugs and Oxygen Sensors*, 2017 WL 3579753, at *10.  Given this close relationship between the alleged conspiracy involving Aisin Seiki and the sales governed by AWA's invoices, Aisin Seiki may enforce the forum-selection clause against AEAS even though it was not a party to the sale.  *See id.*

A contrary result would contravene the very purpose of equitable estoppel, which is designed to "preclude 'a party from asserting his rights he otherwise would have had against

another when his own conduct renders assertion of those rights contrary to equity.'" *Titanium Dioxide*, 962 F. Supp. 2d at 852 (citation omitted).  AEAS should not be permitted to rely on the AWA sales invoices to assert its claim that the prices AWA charged were inflated while simultaneously repudiating the invoices' forum-selection clause.  "To rule otherwise would in essence allow [AEAS and the putative] class members to have their cake and eat it too."  *Id.* (holding that nonsignatories in federal antitrust price-fixing case could enforce forum-selection clauses under equitable estoppel).

### C.  To Enforce the AWA Forum-Selection Clause, the Court Should Dismiss the Claims Under the Doctrine of *Forum Non Conveniens*.

The appropriate way for this Court to enforce the forum-selection clause to which AEAS agreed is through the doctrine of *forum non conveniens*.  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 60-61 (2013) ("*Atlantic Marine*").  A valid forum-selection clause, such as the one in AWA's sales invoices, must be "given controlling weight in all but the most exceptional cases." *Id.* at 63 (citation omitted).  If AEAS seeks to avoid enforcement of the clause, it bears a heavy burden to establish "extraordinary circumstances" related to public interest factors in order to avoid it.  *Id.* at 62-67, 66 n.8; *Lu*, 11 Cal. App. 4th at 1492-93.  AEAS cannot sustain that burden here.

As an initial matter, California Superior Court is an adequate forum in which to resolve AEAS' claim.  While relief under federal antitrust law will be unavailable, AEAS may seek relief under California antitrust law, The Cartwright Act, which was modeled after the Sherman Act and is interpreted similarly to it.  *See Cty. Of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); Cal. Bus. & Prof. Code § 16702.  The Cartwright Act permits class actions and provides for identical remedies to the Sherman Act should AEAS prevail, including treble damages and attorney's fees and costs.  *See In re Cipro Cases I & II*, Nos. 4154 & 4220,

2003 WL 23005275 (Cal. Super. Ct. Nov. 25, 2003) (granting class certification for state antitrust claims); Cal. Bus. & Prof. Code § 16750(a) (authorizing trebled damages, costs, and attorneys' fees); Cal. Code Civ. P. § 382 (class actions).  There is thus no reason why AEAS' interests cannot be fully vindicated in California state court.  *See Vernon v. Stabach*, No. 13–62378–CIV, 2014 WL 1806861, at *5-6 (S.D. Fla. May 7, 2014) (dismissing federal securities fraud claims in favor of forum-selection clause designating Ohio state courts as the exclusive forum to bring suit because Ohio law would provide adequate remedies).

Likewise, the public-interest factors outlined in *Atlantic Marine* do not support a finding that this is one of the rare circumstances where a valid forum-selection clause should not be enforced.  571 U.S. at 62 n.6 (setting forth the permissible public-interest factors that may be considered).  First, this case arises under the federal antitrust laws, and is not a "diversity case [in which] a forum . . . is at home with the law." *Id.*  Second, there is no evidence that the "administrative difficulties flowing from court congestion" in this case favor the Eastern District of Michigan. *Id.*  Finally, there is no particular "local interest" in resolving the case in the Eastern District of Michigan given that it alleges a worldwide conspiracy that supposedly affected sales all over the United States. *Id.*

For all of these reasons, this Court should enforce the AWA forum-selection clause and dismiss the claims against Aisin Seiki based on AWA's sales under *forum non conveniens*. Since the remaining claims against Aisin Seiki based on joint and several liability for sales by other Defendants or co-conspirators are inherently inseparable from those subject to the forum selection clause, the Court should exercise its discretion to stay their adjudication. *See Spark Plugs and Oxygen Sensors*, 2017 WL 3579753, at *11.  A stay would reduce duplicative

proceedings on common issues and preserve this Court's valuable judicial resources, as well as promote the strong federal policy in favor of enforcement of forum-selection clauses.

## II.   THE COMPLAINT'S ALLEGATIONS ARE INSUFFICIENT UNDER *TWOMBLY*.

In order to pass muster under *Twombly* and force Aisin Seiki "to engage in protracted litigation and bear excessive discovery costs," AEAS must allege facts that plausibly suggest that Aisin Seiki participated in the alleged conspiracy to fix prices for VTCD sold to direct purchasers, including in the aftermarket for replacement VTCD.  *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 908-09 (6th Cir. 2009) (citing *Twombly*, 550 U.S. at 558-59).  The Complaint utterly fails this test.

As an initial matter, the Complaint fails to identify any specific conduct or role of Aisin Seiki in the conspiracy or in the aftermarket for VTCD replacement parts.  Rather, it largely conflates all eleven defendants together with Denso and numerous other unnamed co-conspirators as a group.  But collective allegations against a broad group of distinct entities do not satisfy plaintiff's burden to plead the individual participation of each entity in the alleged conspiracy.  *See, e.g.*, *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) ("[g]eneric pleading, alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy," does not satisfy *Twombly*).  Thus, the Complaint should be dismissed on this ground alone.

Even if the Court were to accept AEAS' use of impermissible group pleading, the Complaint contains no plausible allegation of Aisin Seiki's participation in a conspiracy to fix prices in the VTCD aftermarket for replacement parts.  The only facts alleged regarding the purported misconduct by Aisin Seiki or its co-defendants are derived almost exclusively from the admissions made in their guilty pleas in the underlying criminal cases.  However, the pleas only

11

described a conspiracy to allocate the market and rig bids for VTCD sold to particular OEMs.
*See* Ex. A, Aisin Plea ¶ 2 (identifying the criminal charge as an anti-competitive conspiracy over
"devices sold to automobile manufacturers . . . and certain of their subsidiaries, affiliates, and
suppliers"); *id.* ¶ 4(b) (admitting that "the primary purpose" of the conspiracy was to fix prices
for valve timing devices "sold to Automobile Manufacturers in the United States and
elsewhere").  There was no admission by Aisin Seiki (or any other Defendant) to participating in
a conspiracy to fixing prices in the VTCD aftermarket or that their conspiracy targeted or
affected prices in the aftermarket.  Nor did the government allege that in the charges.  *See* Ex. F,
Aisin Information ¶¶ 1-10.  While evidence concerning a prior guilty plea may make allegations
of a conspiracy more plausible in certain circumstances, evidence of a guilty plea to a conspiracy
against OEMs cannot reasonably support an inference in this case that a conspiracy existed with
respect to a different set of customers.  Absent additional facts showing some agreement to fix
prices in the aftermarket, AEAS fails to show a conspiracy targeting aftermarket purchasers
existed.  *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD),
2017 WL 35571, at *6 (S.D. Cal. Jan. 3, 2017) (dismissing complaint that alleged facts regarding
a conspiracy to fix prices for tuna but asked "the Court to draw the inference that" the conspiracy
targeted the "entire packaged seafood industry"); *In re Iowa Ready–Mix Concrete Antitrust
Litig.*, 768 F. Supp. 2d 961, 973, 979 (N.D. Iowa 2011) (dismissing complaint where allegations
of guilty pleas to separate bilateral conspiracies did not sufficiently support a claim of "an
'overarching' conspiracy"); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, Nos. M 07–1827 SI &
C 09–5609 SI, 2010 WL 2629728, at *5  (N.D. Cal. June 29, 2010) (dismissing complaint where
plaintiffs' allegation of conspiracy in the STN-LCD panel market was insufficiently supported

by guilty pleas concerning TFT-LCD panels with no additional specific factual allegations linking the pleas to the alleged conspiracy).

Nor are there any nonconclusory factual allegations connecting the prices charged to OEMs with the prices charged to aftermarket purchasers. The Complaint baldly asserts that prices for the aftermarket for VTCD are based on the supra-competitive prices allegedly charged to certain OEMs as a result of the conspiracy, but alleges no facts that plausibly support that proposition. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (rejecting "'naked assertion[s]' devoid of 'further factual enhancement'") (citation omitted). While the sale of VTCD to OEMs may be characterized by a competitive bidding process following an OEM's issuance of an RFQ, Compl. ¶¶ 41-45, there is no allegation that aftermarket purchasers used a similar process that would be conducive to bid rigging or otherwise setting forth the mechanism by which aftermarket prices are influenced by the prices charged to OEMs. Unlike *In re Automotive Parts Antitrust Litigation*, 50 F. Supp. 3d 836 (E.D. Mich. 2014), there are no facts alleged to support an inference that market conditions in the VTCD aftermarket are structurally similar to those that were conducive to a bid rigging antitrust conspiracy in the OEM market for VTCD. *See* 50 F. Supp. 3d at 849 (relying in part on the "market conditions conducive to antitrust conspiratorial conduct" to conclude that plaintiffs' allegations were sufficient under *Twombly*). Further, AEAS does not describe any "specific transactions involving Defendants' collusion" in the VTCD aftermarket. *Compare In re Automotive Parts Antitrust Litig.*, Nos. 2:12–cv–00202 & 2:12–cv–00203, 2014 WL 2993753, at *5 (E.D. Mich. July 3, 2014) (complaint was sufficient where it alleged guilty pleas *and* specific transactions of collusion).

In any event, it is implausible that Aisin Seiki participated in a conspiracy to fix aftermarket VTCD prices because neither it nor any of its entities ever sold VTCD to U.S.

13

aftermarket purchasers until September 2015, over a year after it was charged and pled guilty to the OEM conspiracy. *See* Ex. D, Yamada Decl. ¶¶ 5-7. Since it did not sell to purchasers like AEAS, it would not have been able to set the prices at which AEAS bought VTCD for the bulk of the time period of the alleged conspiracy. Moreover, it begs belief that Aisin Seiki would join an antitrust conspiracy to do so within a year after pleading guilty and paying a $35.8 million dollar fine. Ex. A, Aisin Plea ¶ 9.

The only other facts pled regarding the existence of a conspiracy are AEAS' allegations of the inelasticity of demand for VTCD and the barriers to entry to manufacturing VTCDs. *See* Compl. ¶¶ 38-40. Even if true, these facts would not support a reasonable inference that Aisin Seiki joined the alleged conspiracy targeting the VTCD aftermarket. What is required are nonconclusory factual allegations describing the aftermarket conspiracy and Aisin Seiki's purported role in it. Because the Complaint fails to offer anything more than "labels and conclusions" regarding Aisin Seiki's participation in the alleged conspiracy, it should be dismissed. *Twombly*, 550 U.S. at 555.

## III.   THE COURT SHOULD DISMISS AEAS' CLAIMS FOR LACK OF STANDING

To bring an antitrust claim, a plaintiff must allege both that it has suffered injury-in-fact under Article III and it has antitrust standing. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 525 (1983) ("*AGC*"). Constitutional standing requires AEAS to plead facts sufficient to establish it has suffered an injury-in-fact – a "concrete and particularized" and "actual or imminent" injury – that is traceable to the alleged conspiracy and redressable in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Antitrust standing imposes a narrower and more onerous burden than Article III because it further limits the class of viable plaintiffs to those whose "loss stems from a competition-

14

*reducing* aspect or effect of the defendant's behavior." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007). AEAS' Complaint falls far short under both standards.

The Complaint summarily alleges that AEAS bought VTCD from some unnamed Defendant at some unspecified time during the seventeen year purported Class Period and suffered injury as a result of the alleged conspiracy. Compl. ¶ 15. This conclusory assertion is insufficient to establish injury-in-fact because, as explained above, there are no facts to establish that a conspiracy to fix prices in the VTCD aftermarket ever existed. *In re Packaged Seafood Products Antitrust Litig.*, 2017 WL 35571, at *13 (no standing where complaints failed to allege a plausible antitrust conspiracy relating to packaged seafood). The guilty pleas that form the foundation of the Complaint only establish a conspiracy to fix prices for products sold to certain OEMs, not aftermarket purchasers like AEAS. The Complaint is devoid of any other facts that could demonstrate the existence of an antitrust conspiracy targeting the VTCD aftermarket. Thus, AEAS has not established itself as being "among the injured" by the only antitrust conspiracy that the Complaint alleges – a conspiracy to fix prices charged to certain OEMs. *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972).

Even had AEAS alleged sufficient facts to establish that it purchased a product that was affected by the alleged conspiracy, it still fails to sufficiently allege that its injury is fairly traceable to Aisin Seiki. AEAS operates in the aftermarket for VTCD, but no Aisin Seiki entity sold VTCD to AEAS until November 2015. *See* Ex. D, Yamada Decl. ¶¶ 5-7; Ex. E, Fujishiro Decl. ¶¶ 6-9. Thus any sale to AEAS occurred years after the conspiracy was ended by the government investigations. The Complaint's cursory assertion that the Class Period should run through 2017, *see* Compl. ¶ 8, is entirely unsupported by any facts showing that the conspiracy

continued past 2010 when the government raids on Defendants' offices occurred or, at the latest, 2014 when the last guilty plea was alleged to have been entered.

These deficiencies are also fatal to AEAS' ability to establish antitrust standing under the facts outlined in *AGC*.  *See AGC*, 459 U.S. at 536-48.  The Complaint fails to allege any nonconclusory facts linking the inflated prices charged to those OEMs as a result of the conspiracy with the aftermarket prices that AEAS paid.  Nor does it contain any facts indicating that the alleged conspiracy was targeted at non-OEM purchasers since it relies solely on Defendants' guilty pleas to a conspiracy that targeted a select group of OEMs.  It therefore cannot satisfy the first two *AGC* factors – a causal connection between the alleged conspiracy, and AEAS' purported injury and that the harm was intended to be caused and AEAS' status as a consumer in the relevant market.  *See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 402, 404 (6th Cir. 2012).

## IV.    AEAS IS NOT ENTITLED TO SEEK INJUNCTIVE RELIEF.

Finally, AEAS' request for an injunction restraining "Defendants . . . from continuing and maintaining" the alleged price fixing conspiracy, *see* Compl., Prayer for Relief ¶ D, should be struck because the Complaint fails to plausibly establish "any real or immediate threat" of continuing anti-competitive conduct.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969).

Even assuming the prior existence of a conspiracy targeting the VTCD aftermarket, the Complaint is devoid of facts from which the Court could infer that any such conspiracy has continued past 2010 into the present day.  The plea agreements upon which the Complaint relies define the time period of the conspiracy as ending by February 2010, *see, e.g.*, Ex. A, Aisin Plea ¶¶ 2, 4(a), when government authorities "executed surprise raids" at Defendants' offices, Compl. ¶ 52.  Nor does the Complaint allege any other conduct by any defendant or co-conspirator in

furtherance of the conspiracy after February 2010.  A request for injunctive relief cannot rest solely on past conduct because it does not demonstrate the type of impending or recurring violation required to establish standing to obtain an injunction.  *See Lujan*, 504 U.S. at 564.

Moreover, it is implausible that the Defendants would continue conspiring under the scrutiny of antitrust investigations by multiple government authorities or after pleading guilty to criminal antitrust charges and agreeing to cooperate with the government.  Compl. ¶¶ 52, 56.  Continuing to engage in anti-competitive conduct would risk the Defendants' cooperation agreements and could trigger all the negative consequences that result from a breach.  *See, e.g.*, Ex. A, Aisin Plea ¶¶ 21-22.  Indeed, during its plea allocution, Aisin Seiki renounced its past misconduct and affirmed under oath that the unlawful conduct will not be repeated:

> The DEFENDANT: Aisin has cooperated with the Department of Justice, in the investigation and also has taken steps to strengthen its commitment to antitrust compliance to ensure this type of issue does not occur again.

Tr. of Initial H'rg, Change of Plea, and Sentencing Hr'g at 38:23-39:22, *United States v. Aisin Seiki Co., Ltd.*, No. 14-cr-00229-JMS (S.D. Ind. Feb. 4, 2015), ECF No. 33 [attached hereto as Ex. I] ("Aisin Seiki Plea Hearing").  The presiding judge concluded that further relief was not required to deter future violations, noting that the sentence would "promote respect for the law and provide a just punishment" and was "significant enough to deter future criminal conduct." *Id.* at 41:11-14.  Nothing in the Complaint indicates otherwise.  *See In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 17-18 (D.D.C. 2004) (dismissing injunctive relief claim where plaintiffs alleged, without providing any factual basis, that defendants continued to act unlawfully after entry of consent order).

Given the implausibility that the conspiracy has continued, AEAS' bare allegations of a continuing conspiracy are insufficient to establish a real or immediate threat of future harm. Its claim for injunctive relief should be dismissed.

## CONCLUSION

For the foregoing reasons, Aisin Seiki respectfully requests that this Court issue an Order (i) dismissing all claims for failure to state a claim and/or lack of constitutional and antitrust standing under Rule 12(b)(1) and/or (6); or, in the alternative, (ii) dismissing all claims based on direct purchases from Aisin Seiki entities on the grounds of *forum non conveniens* under Rule 12(b)(6) and staying all remaining claims pending the outcome of any state court proceedings.

Dated: May 24, 2018                              Respectfully submitted,

**CLEARY GOTTLIEB STEEN &**          **DYKEMA GOSSETT PLLC**
**HAMILTON LLP**

By: */s/ Jeremy J. Calsyn*                       By: */s/ Howard B. Iwrey* (w/consent)
Jeremy J. Calsyn (Bar No. 467737)       Howard B. Iwrey (P39635)
jcalsyn@cgsh.com                                  hiwrey@dykema.com
2000 Pennsylvania Ave. NW                 39577 Woodward Ave., Suite 300
Washington, DC 20006                           Bloomfield Hills, MI 48304
Telephone: (202) 974-1500                    Telephone: (248) 203-0526
Fax: (202) 974-1999                               Fax: (248) 203-0763

*Attorneys for Aisin Seiki Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeremy Calsyn, hereby certify that on May 24, 2018, I electronically filed the foregoing

**AISIN SEIKI CO., LTD'S MOTION TO DISMISS ALL EUROPEAN AUTO SUPPLY,**

**INC.'S CLASS ACTION COMPLAINT** and accompanying **BRIEF IN SUPPORT** with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record registered for electronic filing.

*/s/ Jeremy J. Calsyn*
Jeremy J. Calsyn
